MARLENE A. CUMMINGS, Secretary Department of Regulation Licensing
Your predecessor asked for comments on proposed administrative rules which would provide procedural guidelines for summary suspension of occupational licenses in Wisconsin. I have reviewed the proposed rules and conclude that the department has authority to enact these rules and that they meet constitutional due process and statutory requirements.
The Wisconsin Legislature has provided for summary suspension of licenses in section 227.51(3), Stats., which states, in part: "If an agency finds that public health, safety or welfare imperatively requires emergency action and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. Such proceedings shall be promptly instituted and determined."
The first question to consider is whether the department has authority to enact guidelines for handling summary suspensions.
It is my opinion that the department does have authority to enact procedural guidelines for summary suspension of occupational licenses. Section 440.03(1) provides: "The department may adopt rules defining uniform procedures to be used by the department, the real estate board and all examining boards attached to the department for receiving, filing and investigating complaints, for commencing disciplinary proceedings and for conducting hearings."
It is my opinion that "summary suspension" is clearly within the embrace and intent of the statutory phrase "receiving, filing and investigating complaints, for commencing disciplinary proceedings *Page 111 
and for conducting hearings" in the above cited statute. The proposed rules are consistent with the administrative function of the department and do not interfere with the independent authority of examining boards with respect to discipline.
Having concluded that the department does have the authority to enact rules governing procedures for summary suspension of licenses, my next inquiry is whether the particular rules you submitted meet constitutional due process and statutory requirements.
The three statutory requirements for summary suspension of licenses are stated in section 227.51. These requirements are each provided for in the proposed rules which the department has submitted. Proposed RL X. 05(1)(b) requires that the agency find that the public health, safety or welfare imperatively requires emergency action. Proposed RL X. 05(7)(g) requires that the finding that the public health, safety or welfare imperatively requires emergency action be included in the summary suspension order. Finally, proposed RL X. 05(8) requires that disciplinary hearings be promptly instituted and decided. Therefore, it is my opinion that the department's summary suspension rules are consistent with the Wisconsin statutes.
A constitutional issue arises in connection with summary suspension of occupational licenses because a licensee has a legally recognized expectation of continued enjoyment in his or her license absent proof of culpable conduct. Accordingly, licensees have a property interest in their licenses sufficient to invoke the protection of the due process clause. See Board ofRegents of State Colleges v. Roth, 408 U.S. 564 (1972).
Procedural due process requires that the state not suspend or revoke a license without affording the licensee a full and fair hearing before an impartial tribunal at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 552
(1965). In general, under this definition, a licensee is entitled to a hearing prior to deprivation of his or her license.
However, the Supreme Court has rejected the idea that every deprivation must be preceded by a hearing. The Court has recognized situations where post-deprivation hearings satisfy procedural due process. Post-deprivation hearings satisfy due process demands, for instance, when the exigencies of a particular situation make it impossible to provide a full and meaningful hearing prior *Page 112 
to the deprivation. See Mathews v. Eldridge, 424 U.S. 319 (1976);Boddie v. Connecticut, 401 U.S. 371 (1971).
In Barry v. Barchi, 443 U.S. 55 (1979), the United States Supreme Court held that a post-deprivation hearing was sufficient to meet procedural due process requirements. There, the Court upheld the validity of a New York statute which granted the New York State Racing and Wagering Board authority to suspend horse trainers' licenses without a pre-deprivation hearing. After weighing the interests of the horse trainers against the interests of the state, the Court found that although the interests of the trainers were substantial, they were outweighed by the state's interest in using the summary suspension procedure to preserve the integrity of horse racing and to protect the public from harm.
In reaching its holding, the Court placed importance on the fact that the New York statute required that the board have probable cause to believe that a horse trainer had violated the racing rules before it could issue a summary suspension. In describing probable cause requirements in this circumstance, the Court stated: "To establish probable cause, the State need not postpone a suspension pending an adversary hearing to resolve questions of credibility and conflicts in evidence. At the interim suspension stage, an expert's affirmance, although untested and not beyond error, would appear sufficiently reliable to satisfy constitutional requirements." Barchi, 443 U.S. at 65.
Later in Cleveland Bd. of Educ. v. Loudermill, ___ U.S. ___,105 S.Ct. 1487 (1985), the Supreme Court reiterated the rule that due process requires that a person be given an opportunity for a prompt hearing before he or she is deprived of significant rights, and noted that in Barchi the horse trainer was, in fact, given an opportunity to present his case before the summary suspension. But the Court recognized that in emergency situations, the deprivation of rights could constitutionally take place prior to a hearing. Footnote 7 citing Ewing v. Mytinger Casselberry, 339 U.S. 594 (1950) (immediate seizure under the Federal Food, Drug and Cosmetic Act of mislabeled products which would be "misleading to the injury or damage of the purchaser or consumer" if the product were introduced into interstate commerce), and North American Cold Storage Co. v. Chicago,211 U.S. 306 (1908) (summary seizure of food unfit for human consumption held in storage). *Page 113 
 Also see Hodel v. Virginia Surface Min. Reclam. Ass'n,452 U.S. 264, 299-300 (1981), where the Court acknowledged that summary actions were justified in emergency situations and cited numerous cases to that effect.
The summary suspension rules which the department submitted are similar to those approved by the Supreme Court in Barchi. As true of the New York statute, the department's rules require a probable cause determination prior to summary suspension. In order to issue a summary suspension order, a licensing authority or person acting under its delegation must have probable cause to believe "that the respondent has engaged in or is likely to engage in acts which imperatively require an emergency suspension of respondent's license to protect the public health, safety or welfare." Proposed RL X. 05(1)(b). Moreover, the department's rules provide additional protection of licensees' interests by allowing a licensee to challenge a probable cause determination by showing cause why the summary suspension should not be continued. This challenge can be made at an oral hearing which, if requested, is to take place within twenty days of the summary suspension. At this hearing, the department's rules allow the licensee to appear with counsel and to call and cross-examine witnesses and to introduce evidence into the record.
But the validity of any action taken under the statute and proposed rules will be measured against whether the facts support a finding that there was a severe emergency.
Due process requires that a person be given a prompt hearing in summary suspension matters prior to the full hearing on the merits and it is my recommendation that the proposed rules be amended as follows:
 (5)(b) The request for hearing shall be filed with the licensing authority. The hearing affording the opportunity to show cause shall be scheduled promptly
[for hearing on a date within]* but no later than 20 days [of]* after the filing of the request for hearing with the licensing authority unless a later time is requested by or agreed to by the licensee.
* [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.]
It is my opinion that these and other safeguards contained in the department's summary suspension rules, including provisions for notice, afford a licensee due process under the fourteenth amendment. In situations in which there is probable cause to believe that a *Page 114 
licensee endangers the public health, safety or welfare, the state's interest in having an expedient procedure to protect its citizens becomes acute. The rules submitted by the department provide guidelines for such a procedure and at the same time grant substantial assurances that a licensee's interest will not be baselessly compromised. Barchi, 443 U.S. at 65.
The department should be cautioned, however, that the hearing to show cause provision cannot be used to justify substantial delays in conducting a full hearing. In defending the promptness of a final determination, the state will bear the burden of showing a state interest in any appreciable delay in final resolution. Given the weight of the licensee's interest in a quick resolution of the charges against him or her, this burden would be difficult to meet. See Barchi, 443 U.S. at 66. Therefore, a licensing authority or person acting under its delegation should be quite sensitive to motions made under proposed RL X. 05(8)(b) of the department's rules.
In view of my conclusions above, it is my opinion that the department can promulgate the proposed rules with the one change I have suggested.
DJH:WHW:ch *Page 115